IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FABIAN BASINA and MIKHAIL RUIZ, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 14 C 4090 |
| vs. ) | |
| ) | Judge Milton Shadur |
| SUSHI THAI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

In opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendant SUSHI THAI, by and through their attorneys, L. Steven Platt and Robbins, Salomon and Patt, Ltd., state as follows:

1. **LEGAL STANDARD**

The Plaintiffs in this case filed a jury demand and asked for $1 million dollars. And the Plaintiffs have taken the unusual but not unprecedented step of seeking partial summary judgment in this case.

As with any summary judgment motion, this court must accept each Defendant's version of any disputed facts, if Defendant's version is supported by record evidence. Thus for present purposes, partial summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party in this case the Defendant. *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The absence of a genuine issue as to one of several claims for relief by the Plaintiffs is probably a waste of judicial resources if it does not resolve a substantial issue in this case and of course, even if granted it will not entitle the Plaintiffs to judgment as a matter of law as to the whole case. Fed.R.Civ.P. 56(d). So what is really meant when a party moves for "partial

summary judgment," is that they want no more than a pretrial adjudication, interlocutory in character, specifying certain issues to be "deemed established" for trial. 6 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.20 (2d ed.) Its purpose is to parse out something in the case when the Plaintiffs know they can't get summary judgment as to the case as a whole. *Yale Transport Corp. v. Yellow Truck & Coach Mfg.*, 3 F.R.D. 440, 441 (S.D.N.Y.1944). It is to "frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation." *Capitol Records, Inc. v. Progress Record Distrib.*, 106 F.R.D. 25, 29 (N.D.Ill.1985); *see also SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 558 (N.D.Ill.1984).

Unless this court can do this, unless it feels that a reasonable jury could not possibly believe and could never rule in favor of the Defendant on the limited issues which Plaintiffs now want to make appealable on an interlocutory basis, then the Plaintiffs' motion must be denied.

Despite the fact that this is an FLSA case with its shifting burdens of proof, every Rule 56 movant and FLSA Plaintiffs are no exception, bears the burden of establishing the absence of any genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)), in the light most favorable to nonmovants, here the Defendant, and draw all reasonable inferences in their favor (*Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (*Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, but the burden is not much. (*Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). *See also*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## FACTUAL BACKGROUND

As this motion is filed by the Plaintiff, Defendant's version of the facts must be taken as true so long as a reasonable jury could believe their version of the events.

This lawsuit stems from the Plaintiffs' efforts to collect overtime and minimum wages from SUSHI THAI ("SUSHI") for alleged violations of the Tip Pool Regulations to the Federal Fair Labor Standards Act ("FLSA"), 29 C.F.R. § 531.54 to 29 U.S.C. § 203(m), which Plaintiffs argue also apply to the Illinois Minimum Wage Law, 820 ILCS § 105/4(c).

The Plaintiffs are in two separate job categories. Plaintiff Fabian Basina was employed as by Defendant but denies he was employed as a "chef/cook/sushi maker." (Plaintiff's Complaint hereafter "PC" ¶ 17 and Defendant's Second Amended Answer to Plaintiff's Complaint filed with leave of court and docket # 44-1. hereafter "DA" ¶ 17). Plaintiff Basina and the owner of Defendant agreed on a daily rate of pay. If he worked less than 40 hours that week he got less. If he worked 40 hours he got that rate of pay. If he worked more than 40 hours he got overtime. (DA ¶ 1).

Defendant denies that Basina was scheduled to work between 50-70 hours a week DA ¶ 18. Defendant denies it failed to maintain records regarding Defendant Basina's hours. DA ¶ 28. The records were produced and the witnesses were questioned on them at length in their Depositions. (DSOF ¶¶ 1, 6, 11-12, 14,-15, 18).

Defendant states Basina's daily pay was the hours worked times the minimum wage. If he worked the hours for a full day he received a full's day's pay. If not, the hours were deducted. (DSOF ¶¶ 1, 6, 11-12, 14,-15, 18). Defendant claims that Basina was paid extra for extra hours worked and is not owed any overtime pay. (DSOF ¶¶ 1, 6, 11-12, 14,-15, 18).

Plaintiff Ruiz was a server. DA ¶ 48. Defendant states that Basina never worked more than 40 hours according to its records and the recollection of its Manager, in any given week. (DSOF ¶¶ 1, 6, 11-12, 14,-15, 18).

The way the tip pool was operated was uniform across the board. (DSOF ¶¶ 7,14). The way it works is that all tips are pooled. Then 15% of it goes to the bar employees. Then 20% of the 15 goes to the kitchen employees. Then 15% of what is left at that point goes to the bus-boys, and the remaining 15% is distributed among the servers. (DSOF ¶¶ 7.14).

The parties agree that Defendant deducted 5% of top of the tip pool for "credit card processing fees."[1] (Plaintiff's Statement of Facts, hereafter "PSOF" ¶ 8). Once the employer takes the 5% credit card processing fee, 15% is allocated for the bar employees, 15% for the busboys and the remainder is split between the servers that worked for that particular day. (DSOF ¶ 8.)

The way the tip pool is operated is communicated to the servers in writing. (DSOF ¶¶ 7.14). It is written down on a piece of paper and given to them at closing time each night. (DSOF ¶¶ 7,14). The piece of paper has everything on it – it has all the final numbers. (DSOF ¶¶ 7.14). The paper explains everything; it explains the breakdown in percentages and who is getting what. (DSOF ¶¶ 7.14).

Besides being explained daily in writing all employees are told how the tip pool works when they are hired. (DSOF ¶¶ 7.14). The employer here made sure that the servers at least made

---

[1] Plaintiff cites to the Sixth Circuit's 1999 decision in *Meyers v. The Copper Cellar Corp.,* 192 F.3d 546, 554 (6th Cir. 1999) and states that "It has been judicially and factually established that credit card processors do not charge five 5%." Def. Mem. at 3. Incidentally, the *Meyers* case doesn't discuss American Express and JVC, two of the credit card that Sushi Thai takes. *Cf.* Exh. B, attached to DSOF, at 37 *with Meyers* at 192 F.3d at 555, which only talks about Discover Card, Visa and MasterCard. We don't know how a factual proposition like that could be established as a matter of law by a decision from 1999, no less. As the Seventh Circuit noted in *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008), where a motion raises legal issues other than factual and evidentiary issues, it raises matters of law. A matter of law is something that is based on the interpretation and application of a legal precept. *Hitchens v. Montgomery County*, 278 Fed. Appx. 233 (3d Cir. 2008).

$95 per day. If their tips did not add up to enough for the day, the house would supplement their income by adding to their tip total out of house money (not pooled tips) to get each server's income up to at least $95 a day. (Exh. B, attached to DSOF at 59-60). If they only worked the evening shift they were guaranteed $60.00, even if their tips did not add up to that amount. (Exh. B, attached to DSOF at 61). All hours were kept in a notebook and the total hours worked for each employee including tips paid were sent by e-mail on a regular basis by the employer. (DSOF ¶ 18).

### 2. TIP POOLING UNDER THE FLSA AND ILLINOIS WAGE LAWS

Ordinarily, an employer may only take the tip credit under the FLSA and Plaintiffs argue the IMWL if each tipped employee retains all of his tips. 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). This restriction does not apply, however, if the tipped employees are participating in a valid tip pool. See 29 U.S.C. § 203(m); 820 ILCS § 105/4(c).

Both the FLSA and the IMWL allow employers to take a tip credit against the minimum wage for employees in occupations that "customarily receive gratuities." The IMWL provides:

> Every employer of an employee engaged in an occupation in which gratuities have customarily and usually constituted and have been recognized as part of the remuneration for hire purposes is entitled to an allowance for gratuities as part of the hourly wage rate .... The Director shall require each employer desiring an allowance for gratuities to provide substantial evidence that the amount claimed, which may not exceed 40% of the applicable minimum wage rate, was received by the employee in the period for which the claim of exemption is made, and no part thereof was returned to the employer.

820 Ill. Comp. Stat. § 105/4(c). That allowance is the "tip credit."

Congress brought restaurant workers under the umbrella of FLSA's overtime provisions in 1966 by creating the "tip credit," which allows employees to credit up to 50 % of the tips received by a "tipped employee" toward the required minimum wage (29 U.S.C. § 203(m); S.Rep. No. 89–1487, at 12–13 (1966), U.S.Code Cong. & Admin.News 1966, p. 3002). FLSA

defines a tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips" (29 U.S.C. § 203(t)), and the same section allows tip pooling "among employees who customarily and regularly receive tips."

The FLSA also allows a tip credit, subject to certain conditions, one of which is informing the employee about the tip credit:

> *The [tip credit] shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection*, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).[Emphasis added]. The italicized language was added to the FLSA in 1974. Pub. L. No. 93–959, § 13, 88 Stat. 55, 65 (1974). It was not until 2011, however, that the United States Department of Labor ("USDOL") promulgated a regulation specifying the information required. 29 C.F.R. § 531.59.

The problem with Plaintiffs' application of the line of authority that would impute the federal notice provisions onto the IMWL is that the IMWL does not parallel the FLSA on information to be provided to employees with respect to tip credits, nor is the IMWL silent on the issue. It is different. The FLSA as opposed to the IMWL and the IWCPA includes sections on what the employer must advise the employee. The FLSA specifically requires information on the tip credit, while the IMWL requires the employer to post an approved poster.

The IMWL states:

> Posting of summary of Act and regulations. Every employer subject to any provision of this Act or of any regulations issued under this Act shall keep a summary of this Act approved by the Director [of the Illinois Department of Labor], and copies of any applicable regulations issued under this Act or a summary of such regulations, posted in a conspicuous and accessible place in or about the premises, wherever any person subject to this Act is employed. Employers shall be furnished copies of such summaries and regulations by the State on request without charge.

820 Ill. Comp. Stat. § 105/9.

The IWPCA by contrast contains a notice requirement but it doesn't mandate that the notice be in writing:

> Notification of rate, time and place of payment of wages; records; notices. Employers shall notify employees, at the time of hiring, of *the rate of pay and of the time and place of payment. Whenever possible, such notification shall be in writing and shall be acknowledged by both parties*. Employers shall also notify employees of any change in the arrangements, specified above, prior to the time of change ... Every employer shall post and keep posted at each regular place of business in a position easily accessible to all employees one or more notices indicating the regular pay days and the place and time for payment of his employees, and on forms supplied from time to time by the Department of Labor containing a copy or summary of the provisions of this Act.

820 Ill. Comp. Stat. § 115/10. [Emphasis added]. It says "wherever possible" it should be in writing acknowledging that the realities of the workplace are such that written notices signed by the employees are neither always possible nor feasible.

Other than the provision quoted above regarding the tip credit, the text of the FLSA does not contain a notice and posting requirement comparable to those in the IMWL and IWPCA. The only federal equivalent if it is that is the USDOL regulations that state that:

> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

29 C.F.R. § 516.4.

Plaintiffs observe that, as a result of the common purpose and the similar language of the IMWL and the FLSA, the same analysis has generally been applied to the two statutes. *See, e.g., Condo v. Sysco Corp.*, 1 F.3d 599, 601 n. 3, 605 (7th Cir.1993) (adopting parties' agreement that FLSA and IMWL are coextensive); *Williams–Green v. J. Alexander's Rests., Inc.*, 277 F.R.D.

374, 378 (N.D.Ill.2011) (stating that "[t]ip credits are treated identically" under the IMWL and FLSA).

However, Plaintiff's do not discuss *Turner v. Millennium Park Joint Venture, LLC*, 767 F.Supp.2d 951, 956 (N.D.Ill.2011) (Shadur, J.) which notes that there are conceptual problems with "attempt[s] to import FLSA [law] into state law," in the court's discussion of the two statutes.[2]

In light of IMWL § 105/9, the Illinois Administrative Code sections referring to the FLSA regulations for guidance in interpretation cannot, as a matter of statutory construction, import into the IMWL a greater obligation than is imposed by the statute itself. The IDOL's regulations cannot exceed the statutory authority. An agency "has no general or common law authority. The only powers it possesses are those granted to it by the legislature, and any action it takes must be authorized by statute." *Vuagniaux v. Dept. of Prof. Reg.*, 208 Ill.2d 173, 280 Ill.Dec. 635, 802 N.E.2d 1156, 1164 (2003). Where the FLSA and IMWL differ, they must be interpreted differently. *See, e.g., Molina v. First Line Solutions LLC,* 566 F.Supp.2d 770, 783 (N.D.Ill.2007) (finding exclusion applicable to FLSA claim but not to IMWL claim because text of statutes differed substantively); *see also Schmidt v. Smith & Wollensky*, LLC, 268 F.R.D. 323, 327 n. 4 (N.D.Ill.2010) (rejecting plaintiffs' argument that Ill. Admin. Code tit. 56, pt. 210.120 imports into the IMWL a duty to comply with FLSA's notice requirements for the tip credit).

### A. A Reasonable Jury Could Conclude That the Employer Gave its Tipped Employees Reasonable Notice of How the Tip Pool Operated

Besides being explained daily in writing all employees are told how the tip pool works when they are hired. (DSOF ¶¶ 7.14). The employer here made sure that all of the servers at least made $95 per day. There is no evidence that it ever improperly deducted anything from the tip

---

[2] But in fairness, we note that this court eventually held that because plaintiff had no claim under the FLSA, he would have none under the IMWL. *Id.*

pool. If anything it added to it. If the tips did not add up to enough for the day, the house would supplement the income of its tip pool employees by adding to their tip total out of house money (not pooled tips) to get each server's income up to at least $95 a day. (Exh. B, attached to DSOF at 59-60). If they only worked the evening shift they were guaranteed $60.00, even if their tips did not add up to that amount. (Exh. B, attached to DSOF at 61). All hours were kept in a notebook and the total hours worked for each employee including tips paid were sent by e-mail on a regular basis by the employer. (DSOF ¶ 18).

Defendant states Basina's daily pay was the hours worked times the minimum wage. If he worked the hours for a full day he received a full's day's pay. If not, the hours were deducted. (DSOF ¶¶ 6, 12, 19-21). Defendant claims that Basina was paid extra for extra hours worked and is not owed any overtime pay. (DSOF ¶ 20).

Plaintiff Ruiz was a server. DA ¶ 48. Defendant states that Basina never worked more than 40 hours according to its records and the recollection of its Manager, in any given week. (DSOF ¶ 20).

Defendant has records which show what hours were worked and by whom. The Plaintiffs may not like the records but the issue here is whether a reasonable jury could find based on the evidence presented, that by a preponderance of the evidence, Defendant can show that the Plaintiffs were paid for all hours worked.

Plaintiffs presumably have only their self-serving testimony to the contrary which they haven't even presented at this point so as of this date there is no evidence of record to contradict Defendant's claim.[3]

---

[3] Defendants will object and move to strike if Plaintiffs suddenly attach affidavits to their reply on this Motion claiming they worked the hours in excess of 40 because currently all we have are the bold and unverified allegations in the original complaint which is not sufficient for this court to grant Summary Judgment on these issues.

### B. A Reasonable Jury Could Conclude That The Plaintiffs Did Not Work More Than The Hours Paid

This has been explained above. There is no contrary evidence to the Defendant's Manager's testimony. Plaintiffs' Counsel does his own calculation in the Brief at 11 and claims that the numbers are undisputed but he cites to no testimony that supports his calculations. He has not provided any under oath testimony that agrees with him or the Plaintiffs' own testimony that agrees with him. We object if he attempts to present such testimony or provides the Plaintiffs' affidavit testimony in response in his reply.

His whole argument seems to turn on whether the Defendant had the right to deduct 5% for a credit card processing fee. He says that the *Meyers* court allows the taking of more than 5% if it is justified by what the expenditures are but he cites to no evidence of testimony that this wasn't the correct amount. Def. Mem. at 5. The testimony is that is the amount needed to pay for the credit card processing fee and there is no contrary sworn evidence.

### C. The Plaintiffs Here Have not Met Their Burden to Prove That They Have Performed Work for Which They Were Improperly Compensated

Plaintiffs' counsel acts in his motion like under the FLSA and the IMWL/IWCPA, that the Plaintiffs have no burden of proof at all. Def. Mem. at 5-6.[4]

As this court has noted on prior occasions, the employee in an FLSA case *still has the burden of proving* that he has in fact performed work for which he was improperly compensated. He must produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. Only then does the burden shift to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the

---

[4] There appears to be a type in the heading which says that "Lack of Records Should Not Be Fatal to Defendant's Defenses." Def. Mem. at 5. If this is in fact what Plaintiffs' counsel meant then he is right.

reasonableness of the inference to be drawn from the employee's evidence. *Turner v. The Saloon, Ltd.*,749 F.Supp.2d 767 (N.D.Ill. 2007) (Shadur, J.)

Here again, as this is a summary judgment motion, the issue is not whether the court believes that Defendant's evidence is sufficient. The issue is whether a reasonable jury could believe that it is sufficient. We submit that it could.

The evidence consists of the sworn testimony of Mr. Mocha M. Nakanant who is the Manager of the Libertyville Restaurant where the Plaintiffs worked. It consists of the written records of the business. (DSOF ¶ 5 and Exh. F, attached to DSOF). And there is nothing to contradict it in Plaintiffs' motion – not even the Plaintiffs' testimony themselves. And again, we object if they suddenly come forward with affidavits in reply at this point when we cannot respond to them.

So there is no evidence on which this court can grant this motion.

## CONCLUSION

Based on all of the reasons stated above, Defendant asks that Plaintiffs' Motion for Partial Summary Judgment be denied.

                                                   Respectfully Submitted

                                                   SUSHI THAI

                                                   By:  /s/ L. Steven Platt

L. Steven Platt #3122005
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300

Chicago IL 60601
(312) 456-0285
lsplatt@rsplaw.com