IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FABIAN BASINA** and **MIKHAIL RUIZ**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 14 C 4090 |
| ) | |
| **SUSHI THAI**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Fabian Basina ("Basina") and Mikhail Ruiz ("Ruiz") have sued their former employer, Sushi Thai, a restaurant in Libertyville, Illinois under the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 201-219) and the Illinois Minimum Wage Law ("Illinois Law") (820 ILCS 105/1-105/15). Plaintiffs have filed motions for partial summary judgment on the ground that they were underpaid for the hours they worked in violation of those state and federal minimum wage laws.

## Background

Sushi Thai is owned by Mutjarin Nakanant, who goes by the name "Cathy" (C. Dep. 7:23-8:9).[1] Cathy's youngest son Manocha Nakanant, who goes by the name "Mike," and his wife Heather Basina ("Heather") manage the restaurant along with Cathy (M. Dep. 4:14, 6:17-18, 9:12-21). Heather is the sister of one of the plaintiffs, Fabina Basina ("Basina") (C. Dep. 11:18-20). At certain times Heather, Mike and Basina paid Cathy rent to live in a house that she owned (C. Dep. 40:2-12).

---

[1] Deposition citations will take the form "C. Dep. --" as to Mutjarin Nakanant ("Cathy") and "M. Dep. --" as to Manocha Nakanant ("Mike").

Ruiz was employed as a tipped server/waiter, and he was paid at a reduced hourly rate (called a "tip rate") of $5 (P. St. ¶¶ 3, 6).[2] Sushi Thai operated a "tip pool" under which tips were collected and distributed according to a predetermined formula at the end of each shift (P. St. ¶ 7). Mike, the manager, calculated and recorded tip pool distributions each day (M. Dep. 49-53). Mike testified that at the end of a shift all tips are pooled, and the restaurant first deducts 5% to cover the asserted cost of processing credit cards (M. Dep. 36:8-17). Then 15% of the tips are given to the sushi bar employees, with 20% of that sum going to the kitchen (M. Dep. 33:13-19), after which 15% of what remains in the total tip pool is given to the busboy (M. Dep. 35:22-36:1). Finally the servers split what remains of the tips after those distributions (M. Dep. 24:6-12). Sushi Thai guaranteed servers $95 per day, or $60 for the dinner shift and $35 for the lunch shift -- and in the event servers' tips came up short, the restaurant made up the difference (M. Dep. 59:7-62:22).

Basina was employed as a Sushi apprentice, and he was paid at a rate that corresponded to the hours he worked each week, which the restaurant characterized at times as a "day rate" (Amended Answer [Dkt. No. 32] ¶ 1; P. St. ¶¶ 12, 13).[3] But Basina's pay and hours worked are not entirely discernable from the record for several reasons.

First, in Basina's case Sushi Thai did not comply fully with provisions of the FLSA or its implementing regulations that require employers to keep contemporaneous records of wages and

---

[2] Citations to plaintiffs' Statement of Facts, Memoranda in Support of Summary Judgment and exhibits will take the forms "P. St. ¶ --," "P. Mem. --" and "P. Ex. --" respectively.

[3] Further references to Sushi Thai's Amended Answer [Dkt. No. 32] will take the form "Am. Ans. ¶ --."

hours (29 U.S.C. § 211(c) -- quoted next -- as to the FLSA and 29 C.F.R. §§ 516.1, 516.2, 516.5 and 516.6 as to the regulations):[4]

> Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time . . . as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations . . .

Second, Sushi Thai appears to have had an informal arrangement with Basina as to his wages and hours. Cathy and Mike testified that they paid Basina a rate of $100 per day ($110 on weekends), a number that was assertedly based on a 40 hour work week at minimum wage per hour (Am. Ans. ¶ 1; C. Dep. 47: 5-8; M. Dep. 56:5-14).

Basina's rate of pay is listed as a "salary" of $26,520 in Sushi Thai's tip pool records (S. Exs. C, D), and as $24,440 on the employee contact list generated May 31, 2012 (S. Ex. D [Dkt. No. 78-4] at 32),[5] but Sushi Thai later stipulated that Basina was for all intents and purposes a by-the-hour employee (Am. Ans. ¶ 1). Sushi Thai also submitted weekly emails from its manager Mike to the restaurant's accountant that show Basina was paid varying dollar amounts each week between 2012 and 2014, but neither the emails nor Basina's paychecks indicate the hours worked during those weeks (S. St. ¶14; S. Ex. F). Further complicating matters, Cathy testified (1) that she lent Basina large sums of money and deducted varying amounts from those paychecks to repay the loans and (2) that she deducted small amounts of rent from Basina's paychecks that he owed her to live in a house she owned (C. Dep. 34: 7 - 40:12).

---

[4] Further references to 29 U.S.C. § -- will take the form "Section --," omitting the prefatory "29 U.S.C. §." References to the Illinois Minimum Wage Law will likewise omit the prefatory "820 ILCS 105/--" and take the simpler form "Illinois Law § --."

[5] Citations to Sushi Thai's Statement of Facts and memorandum in opposition to summary judgment will take the forms "S. St. ¶ --" and "S. Mem. --" respectively.

Sushi Thai did not reflect Basina's repayments and loans to and from the restaurant's owner in its records.

There is only one indication in the record of Basina's hours: an email dated February 11, 2016 from Mike to his lawyer that reconstructs estimates of the hours Basina worked between December 1, 2012 and February 21, 2014 based on documentation of his weekly paychecks (P. Ex. 5). As to that email Sushi Thai admits that "Manager 'Mike' calculated the amount of hours Plaintiff Basina worked based on the paychecks," but it is silent on the accuracy of his estimates (S. St. ¶16).

**Legal Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seak Co., 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to drawn from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## Ruiz's Claims

Ruiz contends that Sushi Thai's practice of deducting 5% from the tip pool before distributing to servers violates the legally relevant provisions and that Sushi Thai should therefore be prohibited from claiming state or federal tip credit exemptions (S. Mem. 2). Under the FLSA and the Illinois Law an employer may offset its minimum wage obligations with tips that its employee actually receives if that employee regularly receives gratuities (Section 203(m); Illinois Law § 4(a)(1), (c)). But an employer may not claim the federal tip credit exemption unless it complies with all the requirements of Section 203(m)'s tip credit provision -- as pertinent to this case, that provision states:

> The [tip credit exemption] shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

And although no Illinois case has directly addressed the issue, the language in Illinois Law § 4(c) also suggests that underpayment renders the state tipped employee exemption unavailable:

> The Director shall require each employer desiring an allowance for gratuities to provide substantial evidence that the amount claimed, which may not exceed 40% of the applicable minimum wage rate, was received by the employee in the period for which the claim of exemption is made, and no part thereof was returned to the employer.

On the specific subject of the cost of processing credit card tips, more than one Court of Appeals have held that employers may deduct from tip pools an amount that reasonably covers such costs without violating the requirements of Section 203(m). In a thorough treatment of the issue <u>Myers v. Copper Cellar Corp.</u>, 192 F.3d 546, 554-55 (6th Cir. 1999) relied on the FLSA's implementing regulations and Department of Labor directives to uphold the practice of deducting reasonable credit card processing fees from tip pools. 29 C.F.R. § 531.52 defines a tip as "a sum

presented by a consumer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.53 clarifies that tips include "amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips." As taught by Myers, 192 F.3d at 554:

> Reading Sections 531.52 and 531.53 together, it is clear that a charged gratuity becomes a "tip" only after the employer has liquidated it and transferred the proceeds to the tipped employee; prior to that transfer, the employer has an obvious legal right to deduct the cost of converting the credited tip to cash.

That does not mean, however, that employers are restricted to deducting the precise transaction fee for every separate credit card transaction. Myers, id. (emphasis in original) also confirmed that an employer may escape liability under the statute:

> even if, as a consequence, some deductions will exceed the expense actually incurred in collecting the subject gratuity, as long as the employer proves by a preponderance of the evidence that, in the aggregate, the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its total expenditures associated with credit card tip collections.

Relatedly the Department of Labor has interpreted its own regulations to permit that activity as well (U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9, 1988)). More recently the Department specified that employers may deduct credit card processing fees "by an amount no greater than the amount charged to the employer by the credit card company" (U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1). And most recently Steele v. Leasing Enters., Ltd., 826 F.3d 237, 244 (5th Cir. 2016) has similarly held:

> Credit card fees are a compulsory cost of collecting credit card tips. As a result, an employer may offset credit card tips for credit card issuer fees and still satisfy the requirements of § 203(m).

This Court will follow the path marked out by those authorities, but that is not the end of its inquiry, for it is always the burden of defendants who claim a statutory exemption (here the

tip pool exemption) to establish their qualification for that exemption (Demos v. City of Indianapolis, 302 F.3d 698, 701 (7th Cir. 2002)). Sushi Thai, then, must demonstrate that it complied with rules and regulations associated with state and federal tip credit exemptions. To that end an employer must prove that its average deductions from a tip pool to cover credit card processing fees "reasonably compensate[ ] it for its outlays sustained in clearing that tip, without surrendering its section 203(m) [tip credit]" (Myers, 192 F.3d at 553).

Sushi Thai seeks to validate 5% as its credit card processing fee, but it offers nothing other than a naked say-so -- wholly without evidentiary support -- for that proposition (S. St. ¶ 9; M. Dep. 37:22-38:20). In its response to the P. St. ¶ 9 assertion that "Defendant Manager 'Mike' has no idea the amount that Credit Card processing fees are actually charged," S. St. ¶ 9 says simply "Denied. It is 5% as testified," citing Mike's Dep. 79. But a careful review of that and surrounding pages reveals no mention whatever of credit card processing fees. Elsewhere in his deposition, when Mike is asked about the actual cost of processing credit card tips, he simply responds "I don't know" (M. Dep. 37:22 - 38:2).

What Sushi Thai has demonstrated here (or more accurately has not demonstrated here) calls to mind the statement by our Court of Appeals in Caisse Nationale de Credit Agricole v. CBI Industries Inc., 90 F.3d 1264, 1279 (7th Cir. 1996), quoting language drawn from one of this Court's opinions:

> A party seeking to defeat a motion for summary judgment is required to "wheel out all its artillery to defeat it." Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, 846 F.Supp. 677, 685 (N.D. Ill. 1994).

This Court is compelled to conclude that Sushi Thai has not met its burden to demonstrate compliance with Section 203(m) and Illinois Law § 4 and is therefore not entitled to offset minimum wage with a tip credit.

Employers who do not meet the requirements of the FLSA and Illinois Law tip pool provisions cannot claim the exemption (Section 203(m); Illinois Law § 4(c)). In such event the employer is liable to tipped employees for regular minimum wage and overtime. Employers who violate the FLSA minimum wage requirements must pay back wages to affected employees plus an equal amount as liquidated damages (Section 216), and employers who violate the Illinois Law must pay back wages plus damages of 2% of the amount of underpayments for each month that the amount remains unpaid (Illinois Law § 12(a)).

After concluding a review of the tip pool records submitted by Sushi Thai, which include Ruiz's weekly hours and pay, this Court has found no instance in which Ruiz was actually paid below the state minimum wage for his work (S. Ex. C). And just as importantly on the current motion, Ruiz has furnished no evidence that refutes Sushi Thai's tip pool records.[6]

In essence the FLSA is a minimum wage and maximum hour law (Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1266-67 (4th Cir. 1996), which "'does not state freestanding requirements pertaining to all tipped employees,' but rather creates rights and obligations for employers attempting to use tips as a credit against the minimum wage" (Trejo v. Ryman Hospitality Props., Inc., 795 F.3d 442, 448 (4th Cir. 2015), quoting Cumbie v. Woody Woo, Inc., 596 F.3d 577, 581 (9th Cir. 2010)). But on the other hand, Courts of Appeals elsewhere have held that when an employer fails to comply with the Section 203(m) tip credit exemption requirements, "the tip credit may not be claimed, regardless of whether employees suffered actual economic harm as a result" (Solis v. Min Fang Yang, 345 Fed. App'x 35, 38 (6th Cir.

---

[6] Ruiz makes an amorphous assertion in his Motion for Partial Summary Judgment that "Defendant failed to maintain records of its Tip Pool and or related payments . . .," but he does not refute any specific portions of the tip pool records furnished by Sushi Thai, nor does he provide any basis for his assertion that Sushi Thai failed to maintain records (P. Mem. 8).

2009)(per curiam)).[7] For instance, Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1323 (1st Cir. 1992) awarded back pay against an employer when the employer failed to notify its employees that it was taking a tip credit exemption, even though the employee "has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements." And the Secretary of Labor has argued that "'if the tipped employees did not receive the full federal minimum wage plus all tips received, they cannot be deemed under federal law to have received the minimum wage 'free and clear,'" which would violate the Department's "free and clear" payment regulation, 29 C.F.R. § 531.35 (Cumbie, 596 F.3d at 581).[8]

Similarly, when an employer violates the Illinois Law § 4(c) tip clause provision, it is no longer eligible to claim an exemption under that statute. And when the exemption is not available, the employer must pay minimum wage.

Accordingly, where as here Sushi Thai has failed to establish (or to create a reasonably probative inference as to) a tip credit exemption, Ruiz is owed the difference between his actual

---

[7] Our Court of Appeals has had no occasion to weigh in on the subject. It is however worth noting that although District Court opinions are of course nonprecedential, numerous of those courts have similarly held that when an employer violates a requirement of the tip pool exemption by (1) failing to notify employees of the exemption or (2) wrongfully retaining a portion of employees' tips (the situation at issue here), the employer is liable to its employees for the full federal minimum wage, regardless of the tips employees have received (see, e.g., Chung v. New Silver Palace Rest., Inc., 246 F.Supp.2d 220, 231 (S.D.N.Y. 2002); Bernal v. Vankar Enters., Inc., 579 F.Supp.2d 804, 807-08 (W.D. Tx. 2008); Schneider v. Cornerstone Pints, Inc., 148 F.Supp.3d 690, 700 (N.D. Ill. 2015).

[8] Cumbie, id. rejected the Secretary's argument because unlike in the present case, Woody Woo had already paid its tipped employees a wage at or exceeding the statutory minimum. In doing so the court turned down the contention that Section 203(m) creates freestanding regulations for employers as to the management of a tip pool even when employers are not offsetting their minimum wage obligations with tips. By contrast, here Sushi Thai has paid its tipped servers below minimum wage and has sought to offset its wage obligations with tips but has not complied fully with Section 203(m). Hence the Secretary's argument -- a contention that in the event of a tip credit exemption violation the employee is entitled to full minimum wage plus tips -- is unimpaired by that decision.

hourly wage and the minimum wage, plus damages, even if his tips may actually have placed his take-home pay above the state and federal minimum wage. Here Sushi Thai has merely asserted -- but without the necessary evidentiary support -- that 5% is a figure that "reasonably compensate[s]" for credit card transaction fees. As the law places the burden squarely on employers to demonstrate their compliance with Section 203(m), and as Sushi Thai has failed to meet that burden, Ruiz's motion for partial summary judgment on his FLSA and Illinois Law underpayment claims is granted.

### Basina's Claims

For his part Basina claims that he is owed money because his weekly pay did not cover statutorily-mandated minimum wage and overtime for the hours he worked (P. Mem. 9). Under both the FLSA and Illinois Law, employees who work more than 40 hours per week must be compensated at least 1-1/2 times their regular hourly rate (Section 207; Illinois Law § 4a(1)). Illinois' minimum hourly wage, which is higher than the federal minimum wage, is $8.25 (Illinois Law § 4(a)(1)).

Every FLSA plaintiff must prove by a preponderance of evidence that he or she "performed work for which he [or she] was not properly compensated" (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946)). Section 211(c) also requires covered employers to keep records of employees' hours and wages. In that respect "[t]he burden must not be unmanageable" for plaintiffs (Adkins v. Mid-Am. Growers, Inc., 167 F.3d 355, 359 (7th Cir. 1999)). Often a plaintiff can prove his or her damages through discovery and analysis of the employer's records (Anderson, 328 U.S. at 687). If however the employer has kept inadequate records "the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate" (Myers,

192 F.3d at 551). And an employee can meet his or her burden if he or she demonstrates performance of the insufficiently-compensated-for work by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" (Anderson, 328 U.S. at 687).

As discussed earlier, Sushi Thai did not keep contemporaneous records of Basina's hours. According to Sushi Thai he was paid at a "daily rate" that assumed 8 hours a day, 40 hours per week, and he received paychecks weekly (S. St. ¶ 12). On weeks during which he worked less he received less money, and Sushi Thai asserts that for days that he worked more he received overtime pay (S. St. ¶ 12; Am. Ans. ¶ 1). On that score the only hard evidence that either party offers is an email from Mike to his lawyer dated February 11, 2016 that contains "best estimates" of Basina's weekly hours from December 1, 2012 to February 21, 2014 (P. Ex. 5), and the overwhelming majority of these estimates report that Basina received adequate overtime for hours worked (id.).

For his part Basina contends that his actual service "exceeds Defendant by several hours each day, thus if Plaintiff is believed by the Jury, the Plaintiff will be owed thousands of hours of overtime" (P. Mem. 10 n.2), but he offers no supporting evidence to meet the "just and reasonable inference" standard required for him to prevail as a matter of law. With Sushi Thai having furnished only a rough estimate of Basina's hours, recorded after the fact and well after this lawsuit was filed, what remains is a genuine issue of material fact that must be resolved at trial. This Court therefore denies Basina's motion for partial summary judgment.

In sum, this opinion has resolved each plaintiff's motion (both part of Dkt. No. 66). To address where this case goes from here, a status hearing is set for 9:15 a.m. November 30, 2016.

_____
Milton I. Shadur
Date: November 21, 2016                          Senior United States District Judge